Tagged Opinion



**ORDERED in the Southern District of Florida on August 01, 2008.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | CASE NO.:05-38130-BKC-PGH |
| JAMES M. COADY, | CHAPTER 7 |
| Debtor(s). / | |
| D.A.N. JOINT VENTURE, L.P., | ADV. NO.:06-1592-BKC-PGH-A |
| Plaintiff(s), | |
| v. | |
| JAMES M. COADY, | |
| Defendant(s). / | |

**MEMORANDUM ORDER SUSTAINING PLAINTIFF'S OBJECTION TO DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(2)(A) AND OVERRULING OBJECTION TO DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(3)**

**THIS MATTER** came before the Court for trial on March 20, 2008, and April 4, 2008, upon D.A.N. Joint Venture, L.P.'s ("DAN" or

"Plaintiff") Third Amended Complaint objecting to James M. Coady's (the "Debtor") discharge under 11 U.S.C. §§ 727(a)(2) and (3) (the "Amended Complaint"). DAN is the assignee of a judgment entered against the Debtor on August 7, 1991, in the Superior Court, Judicial District of Hartford at Hartford, Connecticut, case no. CV-91-0396514-S, in the amount of $290,140.22 (the "Connecticut Judgment").[1] On October 13, 2005, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code (the "Petition Date"). On June 12, 2006, DAN filed this adversary proceeding. The Amended Complaint alleges that the Debtor concealed assets from creditors and the trustee, and failed to keep adequate records from which his financial status could be determined. The Court having heard the testimony of witnesses, considered the documentary evidence, the candor and demeanor of the witnesses, and being otherwise fully advised in the premises, hereby sets forth its findings of fact and conclusions of law.

## FINDINGS OF FACT

The Debtor married Joanne Coady ("Ms. Coady") in 1995. Prior to marriage the Debtor was involved in real estate development in New England and held a state real estate license and a registered

---

[1] On April 22, 2003, Fleet Bank, N.A., assigned its interest in the Connecticut Judgment to The Cadle Company, who subsequently assigned its interest to DAN on May 13, 2003.

principle license. The Debtor testified that he was successful in the real estate business until approximately 1993 when he lost millions of dollars in the economic downturn in the region. When the Debtor and Ms. Coady married, the Debtor had approximately $27 million in debt. There is no evidence that the Debtor transferred any assets to Ms. Coady before they married.

Ms. Coady was the owner and sole shareholder of Constitutional Securities of Florida, Inc. ("Constitutional Securities"), formed in 1997 as a pass-through entity for tax purposes. The capital to start up Constitutional Securities came from Ms. Coady, who received the money from multiple sources unrelated to the Debtor. The Debtor assisted Ms. Coady with the management of Constitutional Securities, without compensation, from 1993 to 2005. As the Debtor described the business arrangement, Ms. Coady provided the capital and he provided the talent. However, neither the Debtor nor Ms. Coady drew a paycheck from Constitutional Securities.

Constitutional Securities commenced business as a real estate broker dealer. On April 21, 1999, the Debtor signed a promissory note in the amount of $164,000 in favor of Henry Zachs (the "Zachs Note"). The Zachs Note was funded by two checks written to the Debtor, who contributed the proceeds of the Zachs Note to Constitutional Securities. Constitutional Securities then invested the proceeds into a real estate project in Rhode Island in which it was the general partner. The purpose of the project was to develop

a hospitality hotel on property next to a golf course. The Debtor testified that although he had no personal interest in the project, Constitutional Securities contributed "hundreds of thousands of dollars" to the project, which eventually failed. The Debtor stated that Mr. Zachs required the Debtor to personally sign the note, rather than Constitutional Securities, because Mr. Zachs thought that it was "the best way to get repaid." The Debtor testified at trial that Mr. Zachs knew the repayment would come from the project in Rhode Island, and not from any direct income from the Debtor.

In approximately 2000, after Constitutional Securities' only real estate investment opportunity failed, Constitutional Securities abandoned the real estate investment and consulting business. Thereafter, the Debtor began to learn a new trade consulting for the golf industry, and used Constitutional Securities to conduct his golf consulting business. The Debtor believed that using the corporate name would add value to his consulting work and allow him to "get out of the glare of the financial problems" that he had been experiencing. Because the Debtor did not have the resources to get started in the golf consulting industry on his own, Ms. Coady assisted him by paying for his membership at the Hudson National Golf Club. The Debtor stated that in order to be a member at Hudson National, either he or Ms. Coady had to meet certain net worth conditions. As long as one spouse had sufficient net worth, he could become a member.

4

Because the Debtor still had a substantial amount of debt, Ms. Coady's net worth was used to assist the Debtor in obtaining the membership. The Debtor stated that he then tried to use his membership in Hudson National to build good public relations in the industry.

From a public relations standpoint, the Debtor and Ms. Coady no longer believed that the term "securities" accurately described their business because the real estate development and investment business had been abandoned in 2003. Therefore, Ms. Coady formed Tri-State Marketing, Inc. ("Tri-State Marketing"), and Constitutional Securities was dissolved on October 1, 2004 for failure to file its annual report. No assets were transferred from Constitutional Securities to Tri-State Marketing, although the record is not clear whether Constitutional Securities had any assets at that time.

While he was married to Ms. Coady, the Debtor did not maintain a bank account in his name for personal use. With approximately $27 million in debt, the Debtor did not believe that he was credit worthy to even apply for a credit card, although he stated at trial that he had not tried to apply for one. Therefore, the automobile that the Debtor drove was leased to Ms. Coady, with the insurance paid from an account titled in the name of Ms. Coady. The house in which the Debtor lived with Ms. Coady was purchased by Ms. Coady with proceeds from the sale of real estate that she previously

5

owned. The Debtor was authorized to use a facsimile of Ms. Coady's signature to write checks on the corporate accounts, and often used the facsimile signature to pay family expenses and bills through the corporate accounts. In lieu of drawing a paycheck from Constitutional Securities or Tri-State Marketing, the corporate accounts were used to pay all of the Debtor's expenses.

This bankruptcy was preceded by a lawsuit, filed by DAN on April 2, 2004, in the United States District Court for the District of Connecticut against the Debtor, Ms. Coady, and Constitutional Securities (the "Connecticut District Court Proceedings"). In the Connecticut District Court Proceedings, DAN seeks: (1) to avoid alleged fraudulent transfers under Connecticut state law, and (2) the imposition of a constructive trust against Ms. Coady. The complaint in the Connecticut District Court Proceedings contains allegations of fraudulent transfers identical to those in the Amended Complaint in this case. The Plaintiff propounded discovery in the Connecticut District Court Proceedings, and in response the Debtor turned over to the Plaintiff voluminous amounts of documents concerning his financial condition and business transactions, including: the original or a copy of the Zachs Note; 11 years of brokerage account records; eight years of bank statements and cancelled checks for Constitutional Securities and Tri-State Marketing; 18 years of personal tax returns; and three years of corporate tax returns, including the tax returns for Constitutional

Securities.

The Debtor filed his bankruptcy petition under Chapter 7 of the Bankruptcy Code on October 13, 2005. The Plaintiff initiated this adversary proceeding on June 12, 2006 objecting to the Debtor's discharge for alleged concealment of equitable interests in property and failure to maintain adequate records.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (J).

**A.    11 U.S.C. § 727(a)(2)**

The granting of a discharge in bankruptcy is "a privilege accorded to honest debtors who conduct their financial affairs with honesty and openness." *Cadle Co. v. Ogalin (In re Ogalin)*, 303 B.R. 552, 557 (Bankr. D. Conn. 2004). Objections to discharge under § 727 are strictly construed against the creditor and liberally in favor of the debtor. *Dzikowski v. Kirshner (In re Kirshner)*, 2007 Bankr. LEXIS 3779, *7 (Bankr. S.D. Fla. 2007) (citing *Keefe v. Rudolph (In re Rudolph)*, 233 Fed. Appx. 885, 887 (11th Cir. 2007)).

Count I of the Amended Complaint objects to the Debtor's discharge under 11 U.S.C. § 727(a)(2)(A), which provides that:

The Court shall grant the debtor a discharge, unless –
(2) the debtor, with intent to hinder, delay, or defraud a

7

creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed --

(A) property of the debtor, within one year before the date of the filing of the petition;

11 U.S.C. § 727(a)(2)(A).

Section 727(a)(2) prevents the discharge of a debtor "who attempts to avoid payment to creditors by concealing or otherwise disposing of assets." *Kirshner*, 2007 WL 3232258, at *3 (citing *Menotte v. Davis (In re Davis)*, 363 B.R. 614 (Bankr. M.D. Fla. 2006)).

Plaintiff's claim under § 727(a)(2)(A) is based on a theory of asset diversion and continuing concealment of alleged equitable interests that the Debtor had in his wife's assets and corporations. Although the alleged transfers of equitable interests occurred beyond the one-year reach-back period of § 727(a)(2)(A), the Plaintiff argues that the asset diversion scheme constitutes a concealment that continued into the statutory time period. Under the doctrine of continuing concealment, "a debtor's transfer of legal title to property prior to one year before the bankruptcy petition date, coupled with a retention of certain attributes of beneficial ownership into the one-year reach-back period of § 727(a)(2)(A), can constitute a 'concealment' within the meaning of that Section." *Ogalin*, 303 B.R. at 557; *see also Day v. Zwirn (In re Zwirn)*, 2005 WL 1978510 (Bankr. S.D. Fla. 2005). Where a debtor retains control of or has an equitable interest in property, the

8

court may deny the debtor's discharge under the doctrine of continuing concealment. *Zwirn*, 2005 WL 1978510, at *4.[2] Moreover, because a debtor is unlikely to admit to acting intentionally to hinder or defraud creditors, courts often look to badges of fraud to determine fraudulent intent in a concealment scheme as alleged by the Plaintiff. *See Ogalin*, 303 B.R. at 558. Badges of fraud include: (1) family or close relationship between the participants; (2) lack of consideration for the property diverted; (3) enjoyment of possession for use and benefit; (4) financial condition of the debtor before and after the diversion; (5) cumulative effect of transactions and course of conduct after financial difficulties arise; and (6) general chronology and timing of events. *Id*.

Plaintiff alleges that the Debtor devoted his time, talents, expertise and resources to Ms. Coady's companies and investment opportunities, without direct compensation. Plaintiff argues that through this scheme, the Debtor diverted assets to Ms. Coady and her businesses. Plaintiff further argues that by diverting assets, the Debtor supported a luxurious lifestyle for himself, Ms. Coady, and their son, but retained beneficial ownership of assets in an effort to shield his assets from creditors. The Plaintiff relies on *Ogalin* to support its objection to discharge under § 727(a)(2)(A)

---

[2] The Court previously rejected the Debtor's argument that the alleged concealment of an *equitable* interest in property is insufficient grounds for denial of discharge under § 727(a)(2). (Adv. No. 06-1592, D.E. 197.)

based on the alleged asset diversion scheme. In *Ogalin*, the debtor and his wife orchestrated an asset diversion scheme whereby the couple's 20-year-old daughter became the majority shareholder of the family business, recipient of the bulk of the corporation's income, and owner of the principal family residence and investment property. Additionally, the debtor agreed to a significant decrease in his salary so long as the corporation paid for or reimbursed his personal expenses. The debtor's wife and daughter were unable to provide a credible explanation for allocating funds and others assets away from the debtor, other than to hinder creditors. Therefore, the *Ogalin* court found that the debtor acted purposefully to avoid creditor executions. The court evaluated the badges of fraud, focusing primarily on the chronology of events and cumulative affect of all transactions. The court concluded that the debtor acted with the requisite fraudulent intent to deny discharge under § 727(a)(2)(A).

The situation in the this case is similar to that in *Ogalin*. Specifically, the Debtor acquired an equitable ownership interest in Constitutional Securities and Tri-State Marketing by generating business and using funds of the businesses, while Ms. Coady invested little time in the business. Through this scheme, the Debtor diverted the fruits of his labor to Ms. Coady and her businesses in an effort to shield his assets from creditors. The Debtor came into his marriage with Ms. Coady with substantial debt

10

and no personal bank accounts or assets to his name. The Debtor worked for Constitutional Securities and Tri-State Marketing, businesses wholly owned by Ms. Coady, without compensation. Rather than seek compensation for his work that could have been used to accumulate assets or pay his creditors, the Debtor merely used the corporate accounts of Constitutional Securities and Tri-State Marketing to pay his expenses. This payment in lieu of a salary course of conduct is nearly identical to the conduct in *Ogalin*. By using the corporate accounts and the facsimile signature of Ms. Coady to make payments for his personal expenses, the Debtor was able to avoid ever acquiring assets that could potentially be executed upon by his creditors.

Moreover, consideration of the badges of fraud supports a finding of fraudulent intent in this case. First, there is a close family relationship between the participants. The alleged diversion of assets took place between the Debtor, his wife, and his wife's businesses. Second, although the Debtor provided his time and talent to the businesses, he received no consideration for his services other than payment of personal expenses by the corporations. Additionally, by making payments directly from the companies' accounts, the Debtor enjoyed the use and benefit of assets generated through his labors without ever having to take title to the assets.

As noted previously, the most significant factors for the

*Ogalin* court were the cumulative effect of transactions and the debtor's course of conduct after financial difficulties arose. In *Ogalin*, the debtor began to divert assets and income - by decreasing his salary, increasing his wife's and daughter's salaries, and transferring ownership to his daughter - as his assets became more at risk for execution by creditors. In this case, the Debtor had significant debts at the time he was married. He continued to work, yet never received any income from his labor. The cumulative effect of this conduct was to avoid ownership of any assets to satisfy creditors' claims.

The Court finds that the Debtor diverted the fruits of his labors to the corporations, wholly owned by Ms. Coady, thereby hindering creditors. While the Debtor may not have actually concealed a specific asset, by diverting all of his earning ability to the business, the Debtor effectively concealed his assets from creditors. This concealment continued into the one-year time period prior to the Petition Date and therefore constitutes a continuing concealment sufficient to deny discharge under § 727(a)(2)(A). Moreover, consideration of the badges of fraud in this case supports a finding that the Debtor acted with the requisite fraudulent intent as required for denial of discharge under § 727(a)(2)(A). Therefore, Plaintiff's objection to discharge under § 727(a)(2)(A) is sustained.

**B.    11 U.S.C. § 727(a)(3)**

Count II of the Amended Complaint objects to the Debtor's discharge under § 727(a)(3), which provides that:

The court shall grant the debtor a discharge, unless -

. . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).

The objecting party bears the burden of showing that the debtor failed to maintain or preserve adequate records. *See Dzikowski v. Chaunsey (In re Chaunsey)*, 308 B.R. 97, 103 (Bankr. S.D. Fla. 2004), *aff'd in part, rev'd in part sub nom Chauncey v. Dzikowski (In re Chauncey)*, 454 F.3d 1292 (11th Cir. 2006). The burden then shifts to the Debtor to explain any deficiencies in documentation "in such a manner as to convince the court of good faith and businesslike conduct." 308 B.R. at 102-03. The Debtor is not required to provide a full accounting of every business transaction, but "should have written records from which his past and present financial condition can be ascertained with substantial completeness and accuracy." *Williamson Constr. v. Ross (In re Ross)*, 217 B.R. 319, 331 (Bankr. M.D. Fla. 1998).

In the Amended Complaint, the Plaintiff contends that there are five areas in which the Debtor failed to maintain adequate records: (1) the Debtor's alleged equitable interest in Ms. Coady's

13

companies; (2) the Debtor's alleged equitable interest in the marital home; (3) IRS obligations; (4) receivables from consulting work for Empire Golf; and (5) a golf club membership in Hudson National Golf Club. Additionally, at trial the Plaintiff argued that the Debtor failed to maintain records concerning the Zachs Note. As discussed below, the Court finds that the Debtor has acted in good faith and sufficiently explained the absence of documentation on which the Plaintiff bases it objection.

1. *Equitable Interests in Ms. Coady's Companies*

The Plaintiff argues that for more than ten years the Debtor has been the "economic engine" generating income for businesses owned by Ms. Coady, and that by failing to keep personal and corporate records concerning this alleged interest, the Plaintiff and trustee are unable to determine the Debtor's equitable interest in the corporations. The only evidence presented by the Plaintiff was that the Debtor used the corporate bank accounts to pay personal and family expenses, using a facsimile signature of Ms. Coady. Eight years of bank records for these corporations were provided to the Plaintiff in connection with the Connecticut District Court Proceedings.[3] While the Court has determined that

---

[3]During the course of the adversary proceeding, the Plaintiff argued that the Debtor's production of documents in connection with the Connecticut District Court Proceedings could not satisfy the Debtor's burden to produce documents in these proceedings. The Plaintiff believes that the Debtor should be required to produce the same documents to the same entity again in this case. However, the Court finds that the Debtor's

the Debtor concealed equitable interests in assets from his creditors, he has produced sufficient documents to substantiate these interests. Therefore, the Plaintiff has not met its burden under § 727(a)(3) concerning the alleged equitable interests in Ms. Coady's corporations.

2.  *Interest in the Marital Home*

The Plaintiff also argues that the Debtor failed to maintain documents concerning the Debtor's alleged equitable interest in the marital home. The evidence at trial established that the marital home was owned solely by Ms. Coady, who purchased the home in 1999 with proceeds from the sale of real estate that she previously owned. The Plaintiff argues that the Debtor then made mortgage payments, maintenance payments, utility payments, and other payments concerning the marital home using funds from Constitutional Securities and Tri-State Marketing, by handwriting checks and using the facsimile signature of Ms. Coady. As indicated above, 11 years of brokerage account records and eight years of bank records were produced by the Debtor. These records provide evidence of the mortgage and expense payments that related to the home. Therefore, the Court finds that the Plaintiff failed to meet its burden under § 727(a)(3) regarding the Debtor's alleged equitable interest in the marital home.

---

production of documents in the Connecticut District Court Proceedings satisfies the production requirements in this case.

15

3. *IRS Obligations*

The Plaintiff did not present any evidence establishing that the Debtor failed to maintain documents concerning his tax obligations. To the contrary, the uncontroverted evidence at trial showed that, in connection with the Connecticut District Court Action, the Debtor turned over to the Plaintiff 18 years of personal tax returns and three years of corporate tax returns for Constitutional Securities and Tri-State Marketing. As a result, the Court finds that the Plaintiff failed to meet its burden under § 727(a)(3) concerning the Debtor's IRS obligations.

4. *Receivables From Consulting Work For Empire Golf*

The Plaintiff presented no evidence at trial showing that the Debtor was due any receivables from consulting work for Empire Golf. Accordingly, the Plaintiff's objection under § 727(a)(3) concerning the alleged receivables due is overruled.

5. *Golf Club Memberships*

The Plaintiff also contends in the Amended Complaint that the Debtor did not maintain sufficient records concerning the disposition of the membership in the Hudson National Golf Club. At trial, the Plaintiff also argued that the Debtor failed to maintain records concerning membership in other various country clubs. However, the Plaintiff obtained from Hudson National, by subpoena, the subscription agreement, statements, correspondence, and notice of cancellation. Additionally, the Debtor testified that he

acquired a non-equity right-to-use membership with the Dune Bay Golf Club sometime in 2000 or 2001, and abandoned it in 2004 or 2005. The Debtor also testified that he had a similar non-equity right-to-use arrangement with the Wampanoag Country Club in Connecticut. The Debtor explained the right-to-use relationship with the clubs as one where the Debtor was accepted into the club and paid dues, and continued as a member as long as the club liked him. In contrast to the equity clubs, like Hudson National, the Debtor stated that he did not have any written subscription agreements. Additionally, the unrefuted testimony by the Debtor shows that, in connection with the Connecticut District Court Proceedings, the Debtor previously provided to the Plaintiff all documentation that he had concerning his golf club membership interests. Moreover, the Court finds the Debtor's explanation credible and sufficient to justify any lack of records concerning the various golf club memberships. Therefore, the Court finds that the Plaintiff failed to meet its burden under § 727(a)(3) concerning the Debtor's interests in the golf club memberships.

6.   The Zachs Note

While it was not alleged in any of the pleadings, at trial the Plaintiff argued that the Debtor failed to maintain records concerning the Zachs Note, and that as a result, the Plaintiff is unable to determine whether the subsequent donation of the proceeds of the note to Constitutional Securities was a capital contribution

17

or a loan receivable. The Debtor testified that, other than the promissory note itself, he did not have any books and records concerning the Zachs Note and that he does not personally know how Constitutional Securities treated the $164,000 donation. Additionally, while the Debtor did not produce the Zachs Note at trial, he testified that he had previously provided the note to the Plaintiff in connection with the Connecticut District Court Proceedings. The Plaintiff provided no conflicting evidence or testimony to show that the Zachs Note was not produced, and the Plaintiff did not prove what other documents the Debtor should have kept concerning the Zachs Note. Therefore, the Court finds that the Plaintiff failed to meet its burden under § 727(a)(3) concerning the Zachs Note.

The Debtor testified that he turned over to the Plaintiff voluminous amounts of documents concerning his financial condition and business transactions in the Connecticut District Court Proceedings, including: 11 years of brokerage account records; eight years of bank statements and cancelled checks for Constitutional Securities and Tri-State Marketing; 18 years of personal tax returns; and three years of corporate tax returns, including the tax returns for Constitution Securities. The Plaintiff did not present any evidence refuting that it received those documents nor did the Plaintiff prove that those documents were inadequate to determine the Debtor's financial condition or

business transactions for a reasonable period of time preceding the bankruptcy filing. Because the Plaintiff alleges that the trustee could not determine the Debtor's financial condition, it is also significant to note that the Chapter 7 Trustee was not called as a witness at trial to testify concerning his ability to determine the Debtor's financial condition. Moreover, if the documents produced were inadequate, the Plaintiff did not demonstrate what additional documents the Debtor needed to provide. Therefore, the Plaintiff failed to meet its burden of proof and the objection to discharge under § 727(a)(3) is overruled.

## **CONCLUSION**

As previously noted, objections to discharge under § 727 are strictly construed against the creditor and liberally in favor of the debtor. *Kirshner*, 2007 Bankr. LEXIS at *7. For the reasons stated above, the Court finds that the Debtor diverted assets and income to Ms. Coady, Constitutional Securities, and Tri-State Marketing, thereby concealing them from creditors, with the intent to hinder creditors. Accordingly, the Plaintiff's objection to discharge under § 727(a)(2)(A) is sustained and the Debtor's discharge is denied. However, the Plaintiff did not meet its burden to prove that the Debtor failed to maintain or preserve adequate records from which his financial condition or business transactions could be ascertained. Therefore, the Plaintiff's objection to discharge under §§ 727(a)(3) is overruled.

19

**ORDER**

The Court having heard the testimony of witnesses, having considered the documentary evidence, the candor and demeanor of the witnesses, and having been otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES** that:

1) Judgment is awarded in favor of the Plaintiff on Count I of the Amended Complaint.

2) DAN's Objection to Discharge under § 727(a)(2)(A) is **SUSTAINED** and the Debtor's discharge is **DENIED**.

3) Judgment is awarded in favor of the Defendant on Count II of the Amended Complaint.

4) DAN's Objection to Discharge under § 727(a)(3) is **OVERRULED**.

5) Pursuant to Federal Rule of Bankruptcy Procedure 9021, a separate final judgment shall be entered by the Court contemporaneously herewith.

###

Copies Furnished To:

Kevin Gleason, Esq.

James T Haley, Esq.

Howard S Toland, Esq.

James B. Paul, Esq.

AUST

Plaintiff's counsel is directed to serve a conformed copy of this Order on all interested parties not listed above.

20